**NOT FOR PUBLICATION**

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

| | |
|---|---|
| JORGE TAPIA, JR., <br><br> Plaintiff, <br><br> v. <br><br> CITY OF TRENTON, <br><br> Defendant. | Civil Action No. 20-6166 (MAS) (JBD) <br><br> **MEMORANDUM OPINION** |

**SHIPP, District Judge**

This matter comes before the Court on Defendant City of Trenton's ("Defendant" or the "City") motion for summary judgment. (ECF No. 42.) Plaintiff Jorge Tapia, Jr. ("Plaintiff") opposed the motion (ECF No. 44), and the City replied (ECF No. 45). The Court has carefully considered the parties' submissions and decides the matter without oral argument pursuant to Local Civil Rule 78.1. For the reasons set forth below, the Court grants in part and denies in part the City's motion for summary judgment.

### I.   BACKGROUND

Plaintiff has been employed by the City since April 1990. (Def.'s Statement of Undisputed Material Facts ("DSUMF") ¶ 1, ECF No. 42-1.) Beginning in 2007, the City promoted Plaintiff to the role of Acting Chief of Public Safety Telecommunications. (Pl.'s Supplemental Statement of Undisputed Material Facts ("PSUMF") ¶ 1, ECF No. 44.) Approximately seven years later, in September 2014, he assumed the role of Provisional Chief of Public Safety Telecommunications. (DSUMF ¶ 3.)

On or about January 14, 2018, the City submitted a request to the Civil Service Commission ("Civil Service") that it be permitted to promote Plaintiff to the permanent position of Chief of Public Safety Telecommunications without the need for a competitive examination. (PSUMF ¶ 2.)[1] In 2019, Plaintiff applied for the permanent position, with the understanding that because he was serving in that role in a "provisional" capacity at the time, he would be selected so long as he was a "suitable candidate." (*Id.* ¶ 6.)

On August 12, 2019, the City received a Certification of Eligibles for Appointment ("Certification") from Civil Service for the position of Chief of Public Safety Telecommunications, that contained the names of three candidates: (1) Plaintiff, (2) Graciela Cruz-Acosta, and (3) Mario Gray. (DSUMF ¶ 4.) According to the Certification, Plaintiff was the "number one" candidate based on how the applicants scored in the Civil Service evaluation process. (PSUMF ¶¶ 7-8.) The Certification also required a disposition date of November 12, 2019. (DSUMF ¶ 5.) In response to the Certification, the City scheduled interviews with all three candidates for October 28, 2019. (*Id.* ¶ 6.)

In September 2019, however, Plaintiff's doctor diagnosed him with stage 2 breast cancer, and Plaintiff advised his supervisor, John Zappley, of the diagnosis. (PSUMF ¶ 3.) That same month, Plaintiff requested leave for surgery in October 2019. (*Id.* ¶ 4.) On October 28, 2019, Police Director Sheilah A. Coley ("Director Coley") postponed the interviews due to Plaintiff's medical leave of absence. (DSUMF ¶ 7.)

---

[1] The City never produced the response to that request from Civil Service in connection with this lawsuit. (PSUMF ¶ 2.)

On October 29, 2019, Director Coley informed the City's Personnel Officer, Steven Ponella ("Ponella"), that Plaintiff had requested a medical leave of absence from October 29, 2019 through November 15, 2019. (*Id.* ¶ 8.)

On November 6, 2019, Kaymonique Miller, Director Coley's administrative assistant, informed Plaintiff that the interviews had been rescheduled for November 7, 2019, at 1:00 p.m. (*Id.* ¶ 11.) One day later, on the day of the interviews, Plaintiff asked the City if he could attend and participate in the interview. (*Id.* ¶ 12.) According to Miller, when she asked Plaintiff about his doctor's recommendation to not come into work, Plaintiff responded that he could come to work, but that he could not drive. (*Id.* ¶ 13.)

When Plaintiff arrived at the City's police station for the interview, Abigail Santiago informed him that she had spoken to Edmund Johnson, the president of Plaintiff's worker's union, and Johnson stated that Plaintiff would not be attending the interview. (*Id.* ¶ 16.) According to Plaintiff, Johnson also spoke with Ponella, "who expressly agreed to delay the interview and decision process until after Mr. Tapia returned from his leave." (PSUMF ¶ 10.) As a result of Ponella's representation to Johnson that the interviews had been further adjourned, Plaintiff claims that he left the police station without participating in the interview. (DSUMF ¶ 18.) Despite not interviewing for the position, however, Director Coley informed Plaintiff that he was "absolutely going to be considered" for the role of permanent Chief of Communications. (*Id.* ¶ 19.) Director Coley further stated that Plaintiff's medical leave would not be a "total" disqualifier in the evaluation and selection process. (Pl.'s Response to Def.'s Statement of Undisputed Material Facts ("PRSUMF") ¶ 20, ECF No. 44.)

On November 25, 2019, however, the City issued a memorandum to Adam E. Cruz, the City's Police Department Business Administrator, that Cruz-Acosta had been selected for the

3

position of Chief of Public Safety Telecommunications. (DSUMF ¶¶ 22, 24.) Christopher Doyle, a member of the interview panel, testified that none of the interviewers, including himself, ever supported a candidate other than Cruz-Acosta. (*Id.*) Doyle further testified that during the interview, Cruz-Acosta "depicted herself as being an employee of the City that greatly cared about the position," and she explained the nuances associated with the position. (*Id.* ¶ 23.) Plaintiff, however, was "shocked" by the City's selection of Cruz-Acosta because as her former supervisor, Plaintiff was aware that Cruz-Acosta had "numerous disciplinary actions against her, including sleeping on the job, and at one point the City had suspended her for seventeen days." (PSUMF ¶ 15.) Following the City's selection of Cruz-Acosta, the City demoted Plaintiff. (*Id.* ¶ 16.)

On April 14, 2020, the City received Plaintiff's request for leave under the Family Medical Leave Act ("FMLA") from October 29, 2019 to December 1, 2019, and that leave was approved on April 24, 2020. (DSUMF ¶¶ 25-26.)

On April 17, 2020, Plaintiff sued the City in New Jersey Superior Court. (*See generally* Compl., ECF No. 1-2.) The Complaint raises several causes of action: disability discrimination in violation of the New Jersey Law Against Discrimination ("NJLAD"), N.J. Stat. Ann. 10:5-1 *et. seq.* (Count I); perception of disability discrimination in violation of the NJLAD (Count II); unlawful retaliation in violation of the NJLAD (Count III); unlawful interference in violation of the FMLA, 29 U.S.C. § 2601, *et seq.* (Count IV); and unlawful retaliation in violation of the FMLA (Count V). (*Id.* ¶¶ 38-47.) On May 20, 2020, the City removed this action to the United States District Court for the District of New Jersey. (ECF No. 1.) On January 27, 2023, the City filed the instant motion for summary judgment (ECF No. 42), and Plaintiff opposed the motion on February 21, 2023 (ECF No. 44).

## II. LEGAL STANDARD

Federal Rule of Civil Procedure 56(a) provides that summary judgment should be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986); *Kreschollek v. S. Stevedoring Co.*, 223 F.3d 202, 204 (3d Cir. 2000). In deciding a motion for summary judgment, a court must construe all facts and inferences in the light most favorable to the nonmoving party. *See Boyle v. County of Allegheny*, 139 F.3d 386, 393 (3d Cir. 1998). The moving party bears the burden of establishing that no genuine dispute of material fact remains. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986). "[W]ith respect to an issue on which the nonmoving party bears the burden of proof . . . the burden on the moving party may be discharged by 'showing'—that is, pointing out to the district court—that there is an absence of evidence to support the nonmoving party's case." *Id.* at 325.

Once the moving party has met that threshold burden, the nonmoving party "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). The opposing party must present actual evidence that creates a genuine dispute as to a material fact for trial. *Anderson*, 477 U.S. at 247-48; *see also* Fed. R. Civ. P. 56(c) (setting forth types of evidence on which the nonmoving party must rely to support its assertion that genuine disputes of material fact exist). "[U]nsupported allegations in . . . pleadings are insufficient to repel summary judgment." *Schoch v. First Fid. Bancorp.*, 912 F.2d 654, 657 (3d Cir. 1990). If the nonmoving party has failed "to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial[,] . . . there can be 'no genuine [dispute] of material fact,' since a complete failure of proof concerning an essential element of the nonmoving party's

case necessarily renders all other facts immaterial." *Katz v. Aetna Cas. & Sur. Co.*, 972 F.2d 53, 55 n.5 (3d Cir. 1992) (quoting *Celotex*, 477 U.S. at 322-23).

In deciding a motion for summary judgment, the Court's role is not to evaluate the evidence and decide the truth of the matter but to determine whether there is a genuine dispute for trial. *Anderson*, 477 U.S. at 249. Credibility determinations are the province of the fact finder. *Big Apple BMW, Inc. v. BMW of N. Am., Inc.*, 974 F.2d 1358, 1363 (3d Cir. 1992). The summary judgment standard, however, does not operate in a vacuum. "[I]n ruling on a motion for summary judgment, the judge must view the evidence presented through the prism of the substantive evidentiary burden." *Anderson*, 477 U.S. at 254.

### III. DISCUSSION

#### A. Family Medical Leave Act

Under the FMLA, "eligible employees are entitled to [twelve] workweeks of leave during any [twelve]-month period due to an employee's own serious health condition." *Ross v. Gilhuly*, 755 F.3d 185, 191 (3d Cir. 2014). Plaintiff asserts that after he requested this leave, the City interfered with his request and retaliated against him. The Court reviews each of Plaintiff's claims below. For the reasons stated, the Court grants summary judgment in favor of the City on Plaintiff's claim of interference under the FMLA and denies summary judgment as to the remaining claims.

##### 1. Interference

"To present a[n interference] claim under the FMLA, a plaintiff must show: (1) he is an eligible employee, (2) the defendant is a 'covered employer,' (3) he is entitled to leave under the FMLA, (4) he gave the employer notice, and (5) the defendant denied or interfered with the plaintiff's FMLA benefits." *Rojas v. Acuity Brands Lighting, Inc.*, No. 12-2220, 2014 WL 2926510, at *12 (D.N.J. June 27, 2014) (citing *Parker v. Hahnemann Univ. Hosp.*, 234 F. Supp.

2d 478, 483-84 (D.N.J. 2002)). To demonstrate interference, "the employee only needs to show that (1) he was entitled to benefits under the FMLA and (2) that he was denied them." *Id.* at *14 (quoting *Sommer v. Vanguard Grp.*, 461 F.3d 397, 399 (3d Cir. 2006)). Therefore, an "employee need not show that he was treated differently than others[, and] the employer cannot justify its actions by establishing a legitimate business purpose for its decision." *Sommer*, 461 F.3d at 399 (citing *Callison v. City of Phila.*, 430 F.3d 117, 119-20 (3d Cir. 2005)). Nonetheless, a plaintiff cannot pursue a FMLA interference claim when the decision to terminate the plaintiff was made before the plaintiff invoked his rights under the FMLA. *Atchison v. Sears*, 666 F. Supp. 2d 477, 489-90 (E.D. Pa. 2009) ("[N]o FMLA violation occurs where an employer has already decided to terminate the employee before the employee requests FMLA leave.") (quoting *Reinhart v. Min. Techs., Inc.*, No. 05-4203, 2006 WL 4050695, at *13 (E.D. Pa. Nov. 27, 2006)); *see also Brigandi v. John Wiley & Sons, Inc.*, No. 13-5193, 2015 WL 4042104, at *6 (D.N.J. July 1, 2015) (dismissing interference claim on summary judgment because plaintiff failed to demonstrate that the decision to terminate her was made after she invoked her rights under the FMLA). As set forth above, Plaintiff has failed to demonstrate that the decision to select Cruz-Acosta and demote him was made after he invoked his rights under the FMLA. Indeed, Plaintiff concedes that the City received Plaintiff's request for leave under the FMLA from October 29, 2019 to December 1, 2019, on April 14, 2020, and that leave was approved on April 24, 2020. (DSUMF ¶¶ 25-26.). Thus, summary judgment is granted in favor of the City as to Plaintiff's FMLA interference claim (Count IV).

2. *Retaliation*

In Count V, Plaintiff alleges that the City's decision to promote Cruz-Acosta to the position of Chief of Public Safety Telecommunications and demote Plaintiff to a supervisor position with

7

less pay was an act of retaliation for him filing for FMLA leave in violation of 29 U.S.C. 2615(a)(2). On this motion, the City does not dispute that Plaintiff has alleged a *prima facie* case of retaliation. The City, however, argues that summary judgment is warranted because a legitimate, non-discriminatory reason existed for its conduct. (Def.'s Moving Br. 7.) In that regard, the City emphasizes that it had a "deadline to meet for the certification of candidates for the position," and therefore, it could not delay the interviews any longer. (*Id.*) Moreover, the City argues that because Plaintiff had been in the position of Acting/Provisional Chief of Communications for twelve years, the City was "well-acquainted" with the quality of his work and his qualifications. (*Id.* at 9.) According to the City, while Plaintiff was still considered for the position, Cruz-Acosta was chosen based on her "superior qualifications." (*Id.*)

The statute states that "[i]t shall be unlawful for any employer to discharge or in any other manner discriminate against any individual for opposing any practice made unlawful by this subchapter." 29 U.S.C. § 2615(a)(2). In FMLA retaliation claims, courts generally apply the *McDonnell-Douglas* burden-shifting framework. *Ross*, 755 F.3d at 193. First, a plaintiff must establish a *prima facie* case of discrimination, and then, the employer must demonstrate "a legitimate, non-discriminatory reason for the adverse employment action." *Id.* Then, the burden shifts back to the plaintiff to demonstrate "by a preponderance of the evidence, that the articulated reason was a mere pretext for discrimination." *Id.* More specifically, "the non-moving plaintiff must demonstrate such weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions in the employer's proffered legitimate reasons for its action that a reasonable factfinder could rationally find them unworthy of credence, and hence infer that the employer did not act for the asserted non-discriminatory reasons." *Fuentes v. Perskie*, 32 F.3d 759, 765 (3d Cir. 1994).

The Court disagrees with the City's position because several genuine disputes of material fact exist that prevent summary judgment. First, the Court questions the timing of the City's decision to move forward with the interview and selection process while Plaintiff—the leading candidate according to Civil Service—was medically unable to participate. Indeed, the City's sense of urgency is particularly unclear when considered in conjunction with the fact that Plaintiff had served the City as Chief of Public Safety Telecommunications, albeit in a temporary capacity, for twelve years prior to the City's decision to conduct the interviews and select Cruz-Acosta. While the City submits that the position had been in a "transient, impermanent state," and therefore, it needed to "establish permanency for the Department," the Court is unpersuaded given the City's commitment to Plaintiff for over a decade. (Def.'s Moving Br. 7-8.)

In further support of its position, the City claims that it "had a deadline to meet for the certification of candidates for the position of Chief of the Telecommunications Department." (*Id.* at 7.) According to the City, if that deadline was not met, "the City would have had to retest the candidates, wait for a new certification list, and conduct the entire interview process again." (*Id.*) The City maintains that it sought an extension of the Certification from Civil Service due to Plaintiff's health issues, but the extension request was rejected. (DSUMF ¶ 9.) Critically, however, no documentary evidence exists to corroborate the City's version of events. (PRSUMF ¶ 9.) Instead, the City relies only on the testimony of Director Coley that an extension request was facilitated and that request was denied by Civil Service. (Coley Dep. Tr. 26:19-25, 27:1-6, ECF No. 44-2.) Because Plaintiff maintains that no extension request was ever made, the Court emphasizes that a credibility determination related to Director Coley's version of the events is required to decide this dispute of fact.

Second, a dispute exists regarding the conversation between Johnson and Ponella related to the City's decision to postpone Plaintiff's interview—a conversation that bears directly on Plaintiff's decision to leave the police station without participating in the interview process. According to Plaintiff, he arrived for his interview at the police station on November 7, 2019, but he left after being informed by Johnson that his interview had been "adjourned" because of his "medical condition." (PSUMF ¶ 9.) Specifically, Johnson certified that some days prior to the interview date, he spoke with the City's Personnel Officer, Ponella, who "expressly agreed to delay the interview and decision process until after Mr. Tapia returned from his leave." (Certification of Edmund Johnson in Opposition to Def.'s Motion for Summary Judgment ("Johnson Cert."), ¶ 5, ECF No. 44-2.) Plaintiff claims that but for Ponella's specific representations related to the adjournment, Johnson would not have instructed Plaintiff to return home without interviewing and Plaintiff would have participated. (PSUMF ¶ 11.)

Ponella, however, has a noticeably different recollection of his conversation with Johnson. Ponella testified that Johnson informed him of Plaintiff's medical situation, including the fact that his doctor had not yet cleared Plaintiff to return to work. (Ponella Dep. Tr. 26:12-16, ECF No. 44-2.) Ponella further testified that after explaining that the police department had asked that Plaintiff interview anyway, Johnson asked Ponella for his recommendation on how to proceed with the interview process. (*Id.* at 26:16-18.) According to Ponella, he told Johnson that his recommendation for Plaintiff would be to "ask [for the interview] to be postponed until he's released by his doctor." (*Id.* at 26:19-22.) Ponella testified that the conversation concluded shortly thereafter, and that he did not give Johnson any indication that Plaintiff's interview would, in fact, be adjourned by the City. (*Id.* at 27:1-3.) This conversation is significant because it is undisputed that Plaintiff has been employed by the City since 1990, including twelve years as Acting Chief of

10

Public Safety Telecommunications, and that the Civil Service's evaluation process ranked Plaintiff first—ahead of Cruz-Acosta and the other candidate—for the permanent position. (PSUMF ¶¶ 7-8.) Thus, as Plaintiff effectively highlights in opposition to the City's motion, in order to select Cruz-Acosta over Plaintiff, the City must have placed substantial weight on the interview portion of the evaluation, which Plaintiff did not attend. (Pl.'s Opp'n Br. 9.)

Third, the Court finds a genuine dispute of fact exists related to Cruz-Acosta's so-called "superior" work performance record, *i.e.*, the City's purported "legitimate, non-discriminatory" reason for selecting her over Plaintiff and demoting Plaintiff in the process. Although the City argues in support of its motion that Cruz-Acosta was selected over Plaintiff based on her "superior qualifications," it fails to point to any specific evidence in the record to substantiate that assertion. (Def.'s Moving Br. 9.)[2] And, in that same connection, the Court cannot overlook competing evidence in the record. Indeed, Plaintiff has stated that as Cruz-Acosta's supervisor, he was aware of numerous disciplinary actions against her including conduct that in one instance resulted in a seventeen day suspension. (PSUMF ¶ 15.)[3]

Accordingly, since several disputed material facts exist, summary judgment is not appropriate as to Plaintiff's claim for retaliation under the FMLA.

---

[2] While the City generally cites to the deposition of Director Coley, the Court could not find any testimony that spoke to Director Coley's impressions of Cruz-Acosta's performance record in comparison to Plaintiff.

[3] The Court notes that the City does not refute the accuracy of Plaintiff's statement related to Cruz-Acosta's work performance and disciplinary record. Rather, the City argues that this evidence is "irrelevant for the Court's consideration of this Motion for Summary Judgment." (Def.'s Reply Br. 3.) As set forth above, however, because this is a fact that relates directly to the City's purported "legitimate, non-discriminatory" reason for selecting Cruz-Acosta over Plaintiff for the Chief of Public Safety Telecommunications position, the Court finds it material.

B.      **New Jersey Law Against Discrimination**

Next, the City moves for summary judgment on Plaintiff's claims under the NJLAD. (Def.'s Moving Br. 11-13.) Specifically, the City acknowledges that Plaintiff was disabled within the meaning of the NJLAD, that the City selected another individual to perform the same work as Plaintiff after he was removed from the position, and that Plaintiff had been performing at a level that met the employer's legitimate expectations. (*Id.* at 13.) The City, however, argues that Plaintiff was "not completely fired as a City employee," because he was reinstated to his former position as a supervisor in the department. (*Id.*) Thus, the City relies on the same argument as set forth above, *i.e.*, that it had a legitimate, non-discriminatory reason for taking an alleged adverse employment action against Plaintiff. (*Id.*)

All discrimination claims brought under the NJLAD, including the ones here based on disability and perceived disability, which rely on circumstantial evidence, are also controlled by the three-step *McDonnell Douglas* burden-shifting framework. *Tourtellotte v. Eli Lilly & Co.*, 636 F. App'x 831, 841 (3d Cir. 2016); *Viscik v. Fowler Equip. Co.*, 800 A.2d 826, 833-34 (N.J. 2002) (adopting the *McDonnell Douglas* framework for NJLAD employment discrimination cases). To establish a claim of disability or perception of disability discrimination, a plaintiff must show that "(1) he qualified as an individual with a disability, or is perceived as having a disability, as defined by statute; (2) he is qualified to perform the essential functions of the job, or was performing those essential functions, either with or without a reasonable accommodation; (3) he experienced an adverse employment action; and (4) the employer sought another to perform the same work after he was removed from the position." *Lopez v. Lopez*, 997 F. Supp. 2d 256, 272 (D.N.J. 2014) (citing *Victor v. State*, 203 N.J. 383, 409-10 (2010)). The establishment of a *prima facie* case gives rise to a presumption of discrimination. *Viscik v. Fowler Equip. Co.*, 173 N.J. 1, 14 (2002). Notably, the

City does not contest Plaintiff's *prima facie* showing. (Def.'s Moving Br. 13.) Instead, the City again relies on the *McDonell Douglas* test to argue that it had a legitimate, non-discriminatory reason for its conduct.

Here, the same genuine disputes of material fact detailed above, *supra*, prevent an award of summary judgment in the City's favor on Counts I, II, and III. Specifically, the following factual issues remain in dispute: (1) the timing of the interview and selection process relative to Plaintiff's cancer diagnosis and medical leave—something that is further exacerbated by the factual dispute regarding the City's request for an extension of the Certification deadline; (2) the events of the interview day, including the conversation between Johnson and Ponella; and (3) competing evidence in the record regarding Cruz-Acosta's qualifications in the workplace. Thus, the City's motion for summary judgment is denied as to Plaintiff's NJLAD claims in Counts I, II, and III.

### IV.   CONCLUSION

For the reasons set forth above, the Court grants in part and denies in part the City's motion for summary judgment.

/s/ Michael A. Shipp
MICHAEL A. SHIPP
UNITED STATES DISTRICT JUDGE